UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| CAROL WOODARD,<br>  a/k/a/ CAROL Y. WOODARD,[1]<br><br>    Petitioner,<br><br>v.<br><br>FRANCISCO QUINTANA,<br><br>    Respondent. | CIVIL ACTION NO. 5:15-307-KKC<br><br><br>MEMORANDUM OPINION<br>AND ORDER |

*** *** ***

Petitioner Carol Woodard, a/k/a Carol Y. Woodard, is an inmate confined by the BOP in the Federal Prison Camp located on the campus of the Federal Medical Center ("FMC")-Lexington in Lexington, Kentucky.  Proceeding without an attorney, Woodard has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1], challenging a BOP determination that she will be transferred Residential Re-entry Center ("RRC"), commonly known as a half-way house, seven months prior to her projected release date.[2]  Woodard has paid the $5.00 filing fee.  [R. 3]

The Court conducts an initial review of habeas corpus petitions.  28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).  The Court must deny the petition "if it plainly appears from the petition and any attached exhibits

---

[1] The Bureau of Prisons ("BOP") identifies Woodard, BOP Register No. 09051-028, as "Carol Y. Woodard."  *See* http://www.bop.gov/inmateloc/ (last visited November 9, 2015).  The Clerk of the Court will therefore be instructed to list "Carol Y. Woodard" as an alias designation on the CM/ECF cover sheet.

[2] Federal prisoners are transferred to an RRC/half-way house as part of the BOP's transitional program for a preparing them for re-entry into society.  The BOP's website currently reflects that Woodard's projected release date is September 12, 2016.  *See* http://www.bop.gov/inmateloc/ (last visited on November 12, 2015).

that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Woodard's petition under a more lenient standard because she is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts Woodard's factual allegations as true, and liberally construes her legal claims in her favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court has reviewed Woodard's habeas petition, but must deny it without prejudice because Woodard admits that she has not complied with the BOP's administrative remedy process.

### WOODARD'S CRIMINAL HISTORY

In July 2012, Woodard pleaded guilty in an Indiana federal court to Health Care Fraud in violation of 18 U.S.C. § 1347, and October 2012, she was sentenced to serve an 80-month prison term. *United States v. Carol Y. Woodard, No.* 1:08-CR-126-LJM-MJD (S. D. Ind. 2008) [R. 189, therein] Woodard appealed. The Seventh Circuit Court of Appeals affirmed Woodard's conviction but vacated and remanded for re-sentencing, concluding that the district court had improperly calculated her sentence. [*Id.*, R. 255, therein; *see United States of America v. Carol Woodard*, No. 12-3362 (7th Cir. Mar. 27, 2014)]

On May 12, 2014, the district court entered an Amended Judgment, pursuant to which Woodard received a 51-month prison sentence. [*Id.* No. 263, therein] The district court recommended that Woodard be allowed to serve the last twelve (12) months of her sentence in an RCC. [*Id.*, p. 2] Woodard then filed a motion asking the district court to clarify the Amended Judgment as to her restitution obligations, and to reflect that it was recommending a twelve (12) to sixteen (16)-month placement in an RRC. [*Id.*, R. 265,

therein]  On June 17, 2015, the district court entered an order denying that motion, stating, "The Judgment and Commitment Order are clear on both issues and do not require clarification."  [*Id*., R. 269, therein]  Woodard appealed the Amended Judgment, but on October 21, 2015, the Seventh Circuit entered an order dismissing Woodard's appeal pursuant to Federal Rule of Civil Procedure 42(b).  [R. 276, therein]

## CLAIMS ASSERTED IN THE § 2241 PETITION

Woodard states that various officials of FMC-Lexington have "completed Petitioner's halfway house referral in a fraudulent manner" in violation of her right to due process guaranteed by the Fifth Amendment of the U.S. Constitution; the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A); and numerous BOP Program Statements.  [R. 1, pp. 3-4]  Woodard states that the FMC-Lexington officials "…obtained Petitioner's signature for a 12-month halfway house referral agreement in accordance with her May 6, 2014, Judgment and Judicial recommendation on July 21, 2015.  The same parties are complicit in altering of Petitioner's 12-month halfway house referral agreement after Petitioner's date of signing on July 21, 2015."  [*Id*., p. 4]  Woodard attached to her § 2241 petition a copy of the May 12, 2014, Amended Judgment in her criminal proceeding, but she attached no other documents, such as the "agreement" to which she refers in her § 2241 petition.

Woodard alleges that instead of receiving the 12-month RRC placement as recommended in the May 12, 2014, Amended Judgment entered in her criminal proceeding, FMC-Lexington officials have "wrongfully and fraudulently" altered her referral agreement so that she will be spending only seven (7) months in an RRC, not twelve.  [*Id*., p. 4]  Woodard thus contends that she should have been transferred to an RRC in mid-September

3

2015, one year prior to her projected release date of September 12, 2016, but that the BOP has deferred her transfer to an RRC until approximately mid-February 2016, which is seven months prior to her projected release date.

Woodard asserts that she is being irreparably harmed by this action, and that the Respondent has violated both the Second Chance Act of 2007 (the Second Chance Act"), 42 U.S.C. § 17501, and a related statute, 18 U.S.C. § 3621(b).   The Second Chance Act amended 18 U.S.C. § 3624(c) to "authorize[ ] the BOP to consider placing an inmate in an RRC for up to the final 12 months of his or her sentence, rather than the final six months that were available pre-amendment."  *See Montes v. Sanders*, No. CV 07-7284-CJC (MLG), 2008 WL 2844494, at *1 (C.D. Cal. July 22, 2008).  The decision to place an inmate in a pre-release community confinement is "determined on an individual basis" and according to the factors listed in 18 U.S.C. § 3621(b).   Woodard thus alleges that the Respondent has violated her right to due process guaranteed under the Fifth Amendment of the U.S. Constitution.

Woodard next claims that FMC-Lexington Camp Administrator "Coleman" refused to provide her with a copy of the "executed halfway house referral agreement," and that she has submitted a request to obtain that document (and/or other related documents) through the Freedom of Information Act ("FOIA").  [*Id.*, R. 5]  Woodard seeks a waiver of the exhaustion requirements set forth in the BOP's Administrative Remedy Process until such time as her FOIA requests can be honored, claiming that any efforts to exhaust her claims relative to her RRC placement would be futile.  [*Id.*, pp. 6-7]

Finally, Woodard alleges that FMC-Lexington officials who were involved in, or approved, the reduction of her RRC placement from twelve to seven months demonstrated

deliberate indifference to her constitutional rights.   [*Id.*, p. 7; p. 9]   Woodard seeks a declaratory judgment establishing that the prison officials' actions were improper and negligent, and that they violated the U.S. Constitution and various BOP Program Statements.   Finally, Woodard asks the Court to strike down the "fraudulently altered and executed halfway house referral agreement," and direct FMC-Lexington prison officials to immediately transfer her to an RRC.

## DISCUSSION

In this § 2241 proceeding, Woodard challenges a decision which determines the amount of time which she will spend in a halfway house.   Typically, § 2241 is used by federal prisoners to attack the execution of their sentences in connection with the computation of their parole or sentencing credits.   *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). Section 2241 also is the proper remedy for challenging the manner in a prisoner is serving his or her sentence.   *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001).   As a preliminary matter, the Court notes that the law is somewhat unclear as to whether a challenge to a decision affecting RRC placement properly falls under § 2241.

Some case law indicates that the term "execution of a sentence" encompasses a challenge to the place of imprisonment, *see Jalili*, 925 F.2d at 893; *Hacker v. Federal Bureau of Prisons*, 450 F.Supp.2d 705, 709 (E.D. Mich. 2006) (challenge to the BOP's regulations denying prisoner halfway house eligibility properly brought under § 2241); *Joiner v. Walton*, No. 2:12-CV-12147, 2012 WL 2031975, at *1 (E.D. Mich. June 6, 2012), but other case law suggests that any challenge concerning a transfer among penal facilities is not an attack on the execution of a sentence, but is instead a challenge to a condition of confinement, and therefore does not fall under § 2241. *See Simmons v. Curtin*, No. 10-CV-

14751, 2010 WL 5279914, at *1 (E.D. Mich. Dec. 17, 2010); *Minh v. United States*, No. CV306-061, 2006 WL 2444085, at *3 (S.D. Ga. Aug. 22, 2006); *see also Rodriguez v. Edenfield,* No. 13-CV-48-DCR, 2013 WL 5743916, at *1 (E.D. Ky. Oct. 23, 2013) (denying prisoner's § 2241 petition challenging his BOP security classification because the claim should have been brought in a civil rights action); *Devonshire v. Holder*, No. 11-CV-344-GFVT, 2013 WL 460532, at 2 (E.D. Ky. Feb. 6, 2013) (rejecting prisoner's 2241 petition in which he challenged his PSF, increased security level, and other adverse conditions, because such claims could only be properly asserted in a civil rights action).

The Court is persuaded that Woodard's claims challenging the amount of time which she will spend in an RRC reasonably fall under § 2241.[3]  But having determined that Woodard's claims fall under § 2241, the Court nevertheless concludes that Woodard's admitted failure to administratively exhaust her claims prevents consideration of them on the merits.  The doctrine of exhaustion of administrative remedies "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Fazzini v. Northeast Ohio Corr. Ctr*., 473 F.3d 229, 232 (6th Cir. 2006). Thus, "[f]ederal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241." *Id*. at 231.  Exhaustion of administrative remedies "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."  *McCarthy v. Madigan*, 503 U.S. 140, 145

---

[3]  Woodard has identified the following persons and/or entities as Respondents to this action: (1) the FMC-Lexington Satellite Camp; (2) Francisco Quintana, Warden of the FMC-Lexington; (3) Associate Warden "Jiminez;" (4) FMC-Lexington Camp Administrator "Coleman;" (5) FMC-Lexington Unit Manager "Sullivan;" and (6) FMC-Lexington Case Manager "Blair."  However, the only proper respondent to a petition for a writ of habeas corpus is the individual having immediate custody of the person detained, typically the warden of the facility where the petitioner is confined.  28 U.S.C. §2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  As Francisco Quintana is the Warden of FMC-Lexington, the Clerk of the Court will be instructed to terminate the other named five persons/entities as Respondents on the CM/ECF cover sheet, and to designate Francisco Quintana, the Warden of FMC-Lexington, as the sole respondent to this proceeding.

(1992).   Courts may excuse the exhaustion requirement when "the interests of the individual weigh heavily against requiring administrative exhaustion." *Id*. at 146.

The BOP maintains an administrative remedy program through which federal inmates must seek formal review of issues relating to any aspect of their confinement. *See* 28 C.F.R. § 542.10(a).  The administrative remedy procedures require prisoners to submit a request for administrative remedy to the prisoner's warden, to the Regional Director for the BOP, and to General Counsel for the BOP.  *See* 28 C.F.R. §§ 542.13-15. "An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels." *Irwin v. Hawk*, 40 F.3d 347, 349 n. 2 (11th Cir. 1994).

Here, Woodard freely admits that she did not pursue any administrative remedies concerning the decision to place her in an RRC for seven months instead of twelve. Woodard instead chose to challenge the alleged adverse decision as to her RRC placement by requesting documents through FOIA, contending that such a procedure suffices in lieu of compliance with the BOP's administrative exhaustion requirements.  Woodard asserts that it would be futile to exhaust her remedies, but the rationale for requiring exhaustion is greatest when, as here, the parties are expected to develop the issues in an adversarial administrative proceeding.  *Sims v. Apfel*, 530 U.S. 103, 110 (2000).

With respect to exhaustion of administrative remedies, this Court has repeatedly required habeas petitioners to fully exhaust claims regarding RRC placement.  *See, e.g.*, *Riddell v. Hickey*, No. 5:12-CV-88-KSF, 2012 WL 1380341, at *2 (E.D. Ky. Apr. 20, 2012) (rejecting prisoner's argument that it would be futile for him to exhaust his § 2241 claims challenging the denial of early release through the Residential Drug Abuse Program); *Tate v. Holland*, No. 0:10-CV-123-HRW, 2011 WL 127127, at *1 (E. D. Ky. Jan. 14, 2011)

7

("Without an adequate administrative record explaining the BOP's actions [of denying Tate immediate placement in an RRC] and the reasons for taking them, the Court lacks a sufficient evidentiary basis upon which to review the claims asserted in the petition."); *McDowell v. Holder*, No. 10-CV-197-JBC (E.D. Ky. Aug. 13, 2010) [R. 7 at 5]; *Sommerville v. Dewalt*, No. 09-CV-068-KKC, 2009 WL 1211158, at *3 (E.D. Ky. May 1, 2009); *Simmons v. Zuercher*, No. 09-CV-049-ART (E.D. Ky. Oct. 20, 2009) [R. 7 at 7]; *Johnson v. Hogsten*, No. 09-CV-82–GFVT (E.D. Ky. Apr. 15, 2009) [R. 7 at 4].

In a prior § 2241 petition filed in this Court, a federal prisoner admitted he had not exhausted his § 2241 habeas claims, arguing that that the exhaustion process would be futile.   *Rodney Riddell v. Deborah Hickey*, No. 5:12-CV-88-KSF (E.D. Ky. 2012) [R. 1, therein] The Court therefore denied Riddell's § 2241 petition without prejudice, based upon his admitted failure to exhaust his claims.  [*Id.*, R. 4, therein]  On appeal, the Sixth Circuit rejected Riddell's futility argument and affirmed the denial of his § 2241 petition, explaining that federal prisoners who procedurally default on their administrative claims must demonstrate cause and prejudice for the omission, and that Riddell had not demonstrated cause for his failure to exhaust his claims.  [*Id.*, R. 8, therein; *see Rodney Riddell v. Deborah Hickey*, No. 12-5634 (6th Cir. Feb. 19, 2013)]  Similarly, Woodard has not demonstrated cause for failing to exhaust her claims through the BOP's administrative remedy process.

Here, the administrative exhaustion process would have provided complete information relative to the BOP's decision to place Woodard in an RRC for seven months. Absent that information, the Court is unable to address Woodard's allegation that the BOP failed to consider the five factors set forth in 18 U.S.C. § 3621(b).  The Court thus concludes

8

that the policy considerations underlying the exhaustion doctrine require Woodard to exhaust her administrative remedies before seeking judicial relief.  Woodard's § 2241 petition will be dismissed without prejudice to her right to fully exhaust her RRC placement challenges, but she is advised that her claims appear almost certain to fail as a matter of law.

Woodard alleges that the Respondent Francisco Quintana's actions violate the Second Chance Act, 18 U.S.C § 3624(c)(1), which provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community."  This language requires the BOP *to make efforts* to place a prisoner in a transitional facility as his or her prison term nears its end, but it does not *require* such placement to be for any minimum amount of time.  RRC placement is capped at a maximum of twelve months, and as the statute clearly states, the BOP's efforts are only required "to the extent practicable."

 Put another way, RRC placement is helpful for readjustment to society, but a federal prisoner does not have a constitutionally protected right to serve the final twelve months of his sentence in a RRC.  While the Second Chance Act allows the BOP to place an inmate in an RRC for *as much as* twelve months of his sentence, it does not automatically entitle, or guarantee, any prisoner placement in a RRC for twelve months.  *See Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009); *Harris v. Hickey*, No. 10-CV-135-JMH, 2010 WL 1959379, at *3 (E.D. Ky. May 17, 2010) ("the Second Chance Act ... does not automatically entitle, or guarantee, any prisoner an RRC placement term, much less one for a full year of

a prisoner's five-year sentence."). The Second Chance Act only requires the BOP *to consider* placing an inmate in an RRC for up to twelve-months. *Demis*, 558 F.3d at 514.

Further, the decision to place an inmate in pre-release community confinement is discretionary and will be "determined on an individual basis" according to the factors in 18 U.S.C. § 3621(b). *See McIntosh v. Hickey*, No. 10-CV-126-JMH, 2010 WL 1959308, at *3 (E.D. Ky., May 17, 2010). Subsection 3621(a) directs that a person subject to imprisonment is to be given over to the custody of the BOP. The first sentence of subsection 3621(b) uses mandatory language requiring the BOP to make placement arrangement for all prisoners in its custody. The second sentence of the subsection authorizes the BOP to place prisoners in "any available penal or correctional facility." Thus, the statute commits federal prisoners to the BOP's custody, but grants the BOP the authority and discretion to select the prisoner's place of imprisonment. Federal prisoners have no constitutional right to be confined in or transferred to particular facilities, *see Olim v. Wakinekona*, 461 U.S. 238, (1983); *Meachum v. Fano*, 427 U.S. 215 (1976), or to be placed in a specific security classification, *see Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004).

Next, Woodard contends that the Amended Judgment in her criminal case categorically entitles her to a 12-month placement in an RRC, and that the BOP has violated her constitutional and/or statutory rights by reducing her time in an RRC from twelve months to seven months. That claim would also likely fail on the merits. The district judge who sentenced Woodard, although presumably well-meaning, could only *recommend* that the BOP place her in an RRC for the last twelve months of her federal sentence. The 12-month RRC recommendation set forth in the Amended Judgment was only just that: a recommendation, not a directive. Congress has vested the BOP "with the

10

right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner." 18 U.S.C. § 3621; *see also Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). Simply put, a sentencing judge lacks authority to require the BOP to take certain action(s) with respect to federal prisoners, such as dictating where they will be confined or what amount, if any, of sentencing credit they will receive; Congress has delegated such decisions to the BOP. *United States v. Wilson*, 503 U.S. 329, 333–35 (1992); *Castro v. Sniezek*, 437 F. App'x 70, 71 (3d Cir. 2011); *Everett v. Ives*, Case No. 11-CV-180, 2012 WL 2179097, at *2 (E.D. Ky. June 13, 2012) (explaining that the authority to calculate presentence credits "is vested exclusively with the BOP as the delegate of the Attorney General.")

Woodard next asserts that the decision to place her in an RRC for only seven months is arbitrary and capricious and violates the provisions of the APA, 5 U.S.C. § 706(2)(A)-(C). The APA prohibits a federal agency from acting in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; that is contrary to constitutional right, power, privilege, or immunity; or that is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. Woodard's argument on this issue, even if fully exhausted, would likely fail on the merits because by enacting 18 U.S.C. § 3625, Congress has established that the BOP's placement decisions cannot be reviewed for an abuse of discretion. *See* 18 U.S.C. § 3625; *Boulware v. Federal Bureau of Prisons*, 518 F.Supp.2d 186, 188 n. 3 (D.D.C. 2007) (Section 3625 divests court of subject matter jurisdiction over claim under 5 U.S.C. § 706 challenging "any determination,

decision, or order under [the] subchapter" governing imprisonment).[4]  Thus, the APA does not apply to Woodard's case.

Woodard next claims that the BOP ignored its own Program Statements, procedures, and policies, by not granting her a full twelve months in an RRC, she states no grounds entitling her to relief.  The requirements of procedural due process are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Thus, an agency's alleged failure to adhere to its own policies or guidelines does not state a due process claim.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004); *Slater v. Holland*, No. 0:11-CV-86-HRW, 2012 WL 1655985, at *5 (E.D. Ky. May 10, 2012).  Woodard does not allege facts entitling her to relief under § 2241 on this issue.

To the extent that Woodard repeatedly alleges that she is suffering "irreparable harm" by reason the decision to grant her a seven-month RRC placement, and because she asks this Court to intervene on her behalf, it appears that she seeks an injunction requiring the Respondent to immediately transfer her to an RRC.  That request must be denied.

Generally, the moving party bears the burden of establishing his entitlement to a preliminary injunction.  *See Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  In addressing a motion for a preliminary injunction, a court should consider:  (1) the likelihood that the movant will succeed on the merits; (2) whether

---

[4]  If Woodard is alleging that the Respondent's actions violated other provisions of the APA, *i.e.*, the notice and comment requirements set forth in 5 U.S.C. § 553, that claim lacks merit. Courts in this circuit have similarly concluded that pursuant to 18 U.S.C. § 3625, the provisions of the APA "do not apply to the making of any determination, decision or order" made by the BOP pursuant to the provisions of 18 U.S.C. § 3621.  *Orr v. Hawk*, 156 F.3d 651, 655, n. 1 (6th Cir. 1998) (holding that the BOP is exempt from the judicial review and notice and comment provisions of the APA); *Williams v. Shartle*, No. 4:10-CV-1372, 2010 WL 3370525, at *3 (N.D. Ohio Aug. 24, 2010); *Lopez v. Zych*, No. 09-11440, 2010 WL 890177, at *3 (E.D. Mich. Mar 10, 2010); *Thornton v. Hickey*, No. 10-CV-13-JMH, 2010 WL 399103, at *3 (E.D. Ky. Jan. 25. 2010) ("To the extent Thornton claims the BOP failed to comply with the rulemaking requirements of 5 U.S.C. § 553, a Program Statement is not considered a regulation, but merely an interpretative rule or general statement of policy, both of which are excepted from the APA's procedural requirements…. This claim is therefore also without merit."); *Pitts v. Zych*, No. 2:09cv12329, 2009 WL 1803208, at *1 (E.D. Mich. June 19, 2009).

the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction. *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 552 (6th Cir. 2004); *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998); *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573. Usually, the failure to show a likelihood of success on the merits is fatal. *Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

Here, for the reasons discussed above, Woodard cannot establish a substantial likelihood of success on the merits of any of her claims. To recap, the Second Chance Act does not guarantee a one-year RRC placement, but only directs the BOP to consider placing an inmate in an RRC for up to the final twelve months of his or her sentence. *Demis*, 558 F.3d 508, 514; *Goosby v. Shartle*, No. 10-CV-0806, 2010 WL 2545344, at *2 (N.D. Ohio June 17, 2010). Further, absent an administrative record which the exhaustion process would have provided, Woodard has not shown a likelihood that FMC-Lexington officials filed to consider the proper criteria under § 3621(b) in assigning her a seven-month RRC placement. Lacking an administrative record, the court cannot measure all of the criteria which prison officials employed, or did not employ, in reaching its decision. Woodard has thus failed to demonstrate the likelihood of success on the merits of her claims.

As for the second criterion, Woodard has not demonstrated that she will suffer irreparable injury without an injunction. Woodard offers no persuasive reason, other than

her broad conclusory statements alleging irreparable harm, why a seven-month RRC placement versus a twelve-month RRC placement would subject her to irreparable injury, which is the standard. As for the third and fourth criteria, Woodard does not allege that others would suffer harm if the injunctive relief is denied, nor has she demonstrated that the public interest would be adversely affected by denying the injunction. Indeed, such an injunction could constitute harm. "In the context of prison management ... the status quo is to allow the BOP to manage its facilities and the prisoners incarcerated there. A restraining order would disturb the status quo and encroach on the BOP's discretion." *Smith v. Sniezak*, No. 4:07-CV-0306, 2007 WL 642017, *2 (N.D. Ohio February 27, 2007).

The courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); 482 U.S. 78 (1987); *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). At this juncture, ordering the BOP to immediately transfer Woodard to an RRC would contravene 18 U.S.C. § 3621(b) and would undermine the BOP's authority to manage its prisons.

Finally, Woodard alleges that various members of the FMC-Lexington staff fraudulently altered documents which adversely affected/reduced her term of confinement in an RRC, *see* R. 1, p.4; that they demonstrated "deliberate indifference" to her pre-release confinement needs, *see id.*, at pp. 7-9; that she was denied "equal protection under the law" when FMC-Lexington staff members failed to notify the sentencing court of their decision to limit her placement in an RRC to seven months, *see id.*, p. 9; and that she is entitled to a declaratory judgment finding that FMC-Lexington officials violated her various constitutional rights, *see id.*

14

As noted, a petition for a writ of habeas corpus under § 2241 is reserved for a challenge to the manner in which a sentence is executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir.1998). Claims challenging conditions of confinement, on the other hand, must be brought in a civil rights action under 28 U.S.C. § 1331, and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), not a § 2241 habeas petition. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004). If Woodard intends to assert an Eighth Amendment claim alleging deliberate indifference, fraud, or other intentional torts against specific FMC-Lexington officials, she must file a *Bivens* civil rights action after fully exhausting her constitutional claims. Woodard is advised that the filing fee for a *Bivens* action is $400, not $5.00, but she may request *in forma pauperis* status if she elects to file a civil rights action.

## CONCLUSION

Accordingly, **IT IS HERBY ORDERED** as follows:

1.      The Clerk of the Court shall, on the CM/ECF cover sheet, list "Carol Y. Woodard" as an alias designation for Petitioner Carol Woodard.

2.      The Clerk of the Court shall, on the CM/ECF cover sheet, **TERMINATE** the following persons and/or entities as Respondents to this action:  (a) the FMC-Lexington Satellite Camp; (b) FMC-Lexington Associate Warden "Jiminez;" (c) FMC-Lexington Camp Administrator "Coleman;" (d) FMC-Lexington Unit Manager "Sullivan;" and (e) FMC-Lexington Case Manager "Blair," and shall **DESIGNATE** Francisco Quintana, the Warden of FMC-Lexington, as the sole respondent to this 28 U.S.C. § 2241 habeas proceeding.

      3.     Woodard's 28 U.S.C. § 2241 petition for writ of habeas corpus [R. 1] is **DENIED** without prejudice to her right to exhaust her claims challenging her seven-month placement in a Residential Re-entry Center.

      4.     The Court will enter an appropriate judgment.

      5.     This matter is **STRICKEN** from the active docket.

Dated November 13, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY